Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MINUTE ORDER

Case No.: CV-97-5306 CAS                         August 6, 2003

Title:    WORLDWIDE CHURCH OF GOD v. PHILADELPHIA CHURCH OF GOD,
          INC.

---

PRESIDING:    HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE

Maynor Galvez,                              None present
Deputy Clerk                                Court Reporter

---

PLAINTIFF COUNSEL PRESENT:        DEFENDANT COUNSEL PRESENT:
None present                      None present

PROCEEDINGS:    **(1)   PHILADELPHIA CHURCH OF GOD'S MOTION FOR
                        CLARIFICATION OF CONFIDENTIALITY STIPULATION
                        AND ORDER**
                        (filed June 6, 2003)

                **(2)   WORLDWIDE CHURCH OF GOD'S *EX PARTE*
                        APPLICATION FOR ORDER STRIKING PHILADELPHIA
                        CHURCH OF GOD'S MOTION FOR CLARIFICATION OF
                        CONFIDENTIALITY STIPULATION AND ORDER FOR
                        LACK OF SUBJECT MATTER JURISDICTION AND ORDER
                        FOR CONTINUANCE OF WORLDWIDE CHURCH OF GOD'S
                        RIGHT TO OPPOSE MOTION PENDING RESOLUTION OF
                        JURISDICTION**
                        (filed June 20, 2003)

## I.   BACKGROUND

     This case arises from defendant-counterclaimant Philadelphia
Church of God's ("PCG") unauthorized use and distribution of
Mystery of the Ages ("MOA"), the last work authored by plaintiff
Worldwide Church of God's ("WCG") deceased founder, Herbert W.
Armstrong.  The factual background of the case is set forth in
the Ninth Circuit's opinion in Worldwide Church of God v.
Philadelphia Church of God, Inc., 227 F.3d 1110 (9th Cir. 2000)
("Worldwide Church"), cert. denied, 121 S. Ct. 1486 (2001).  In
Worldwide Church, the Ninth Circuit held that PCG had infringed
WCG's copyright by reprinting and distributing MOA and remanded
the case to this Court for the entry of a permanent injunction

ENTER ON ICMS

AUG -7 2003

prohibiting PCG from appropriating the work.  <u>Id.</u> at 1121.  In
doing so, the Ninth Circuit rejected PCG's defense that its use
of <u>MOA</u> constituted "fair use" under 17 U.S.C. § 107.  However,
the Ninth Circuit made no ruling with regard to PCG's
counterclaim which seeks declaratory relief as to eighteen
additional works authored by Armstrong (the "non-<u>MOA</u> works"),
which counterclaims seek relief based upon the Religious Freedom
and Restoration Act, 42 U.S.C. §§ 2000-2000bb-4 ("RFRA"); PCG's
claimed fair use; the "work for hire" doctrine; and abandonment.
<u>See</u> Amended Counterclaim, ¶¶ 14-26.

       During the course of the litigation, the parties stipulated
to a protective order entitled Confidentiality Stipulation and
Order, filed March 3, 1998 (hereafter "the Protective Order").[1]
The Protective Order provides for procedures by which the parties
during discovery could designate documents as "confidential," and
that documents so designated would "be maintained by the
receiving party in confidence according to the terms of this
Stipulation and Order and used by the parties solely in the
preparation, prosecution, defense, settlement, or trial of this
action."  WCG App., Ex. B (Protective Order), ¶¶ 1-2.[2]  The
Protective Order further provides as follows:

       9.    The following provisions of Paragraph 9 shall
             apply only in the event the Court . . . appoints a
             Special Master (or other discovery referee) to
             supervise the conduct of discovery.

             (a)   If a party objects to any designation of
                   Confidential Information, it shall give
                   written notice of such objection ("Notice of
                   Objection") to the designating party setting
                   forth with specificity the Information in
                   question and what lesser restrictions on
                   disclosure, if any, are agreeable to the
                   objecting party.

             (b)   The parties shall then promptly meet and
                   confer in good faith to attempt to resolve

---

       [1]    Pursuant to Local Rule 7-1, the Protective Order,
although stipulated to by the parties, had to be "approved by the
judge" and "filed with the Court."  L.R. 7-1.

       [2]    Paragraph 4 similarly provides that "[t]he receiving
party shall use Confidential Information solely for the purpose
of conducting this litigation and not for any business or other
purpose."  WCG App., Ex. B, ¶ 4.

S:\Orders\CIVIL\1997\97-5306.19.wpd          2

any disputes regarding the designation(s) to which an objection is made.

(c)  If the parties cannot resolve their differences on the Notice of Objection, the producing party just file a motion with the Special Master for an Order, upon a showing of good cause therefor, that the disclosure of material should continue to be restricted as provided in this Order or otherwise. Until the parties agree otherwise or the Special Master so orders, the material to which the Notice of Objection has been given shall continue to be treated as Confidential Information under this Stipulation and Order provided that the designating party files a motion for confidential treatment within fourteen (14) days of receiving the Notice of Objection; if the designating party does not do so, the receiving party is relieved of all obligations under this Stipulation and Order to treat the materials as confidential.[3]

10.  Absence of an objection to any designation merely signifies acquiescence in the designation and not that the parties concede or acknowledge that the information in fact warrants treatment as Confidential Information.

11.  Within sixty (60) days after termination of this litigation and the expiration of the time for appeal, all originals and copies of Confidential Information shall be returned to the producing party or destroyed the receiving party (with such destruction memorialized in a writing from the receiving party's counsel to the producing party otherwise agrees in writing.  All extracts from materials containing Confidential Information, summaries and compilations thereof, and all written, graphic, and recorded versions of information therein shall likewise be returned to the producing party, or destroyed, within sixty (60) days after termination of this litigation and the expiration of time for appeal, unless the producing party otherwise agrees in writing.  The

_____

[3]  Pursuant to Paragraph 9 of the Protective Order, a Special Master presided over the discovery process.

S:\Orders\CIVIL\1997\97-5306.19.wpd        3

> termination of proceedings in this litigation
> shall not relieve the parties from the obligation
> of maintaining the confidentiality of all
> Confidential Information received pursuant to this
> Stipulation and Order.  Provided, however, that
> nothing in this Stipulation or Order shall bar
> either party or that party's counsel from
> maintaining in their files related to this action
> (and in a manner otherwise consistent with the
> terms of this Stipulation and Order) copies of
> Confidential Information are attached as exhibits
> to deposition transcripts or court filings.

WCG's App., Ex. C, ¶¶ 9-11.

On March 5, 2003, the parties entered into a settlement
agreement and mutual release ("Settlement Agreement") regarding
all claims that were raised between the parties or that could
have been raised in the action.  WCG's Ex Parte Application
("WCG's App."), Ex. C (Settlement Agreement), ¶ 1(a)-(f).  With
respect to the treatment of confidential documents, the
Settlement Agreement provides as follows:

> Notwithstanding any of the other provisions of this
> Settlement Agreement, the Parties agree and re-confirm
> that the Confidentiality Stipulation and Order entered
> by the Court in this Action on March 3, 1998, will
> survive the termination of the Action and will govern
> the return and/or destruction of previously produced
> "Confidential" documents.

Id., Ex. C, ¶ 11.

On April 9, 2003, the Court signed the parties' joint
stipulation and order voluntarily dismissing the action with
prejudice pursuant to Fed. R. Civ. P. 41(a)(2).  The stipulation
and order of dismissal provides:

> It is hereby stipulated by and between [WCG] and [PCG]
> through their designated counsel of record that WCG's
> complaint and PCG's counterclaim shall be and hereby
> are dismissed with prejudice pursuant to F.R.C.P.
> 42(a)(2), with each party to bear their own costs and
> attorneys' fees.

WCG's App., Ex. D (Order and Stipulation for Dismissal With
Prejudice of Complaint and Counterclaim) at 2.

On June 6, 2003, PCG filed a "Motion for Clarification of
the Confidentiality Stipulation and Order," arguing that during
the pendency of the litigation, WCG abused the Protective Order
by making overly expansive claims of confidentiality.  PCG's
Motion to Clarify Confidentiality Stipulation and Order at 1
(contending that WCG violated the Protective Order by
"designat[ing] as confidential multiple deposition transcripts
and thousands upon thousands of pages of documents.").  It is
undisputed that during discovery both parties designated certain
documents as "confidential."  Further, it is undisputed that PCG
at no time previously challenged the confidentiality designation
of the documents it claims to be at issue here.

In response to PCG's motion, on June 20, 2003, WCG filed an
*ex parte* application seeking the following relief: (1) an order
striking PCG's motion for clarification of the Protective Order
for lack of subject matter jurisdiction, and (2) an order
continuing WCG's right to oppose the motion pending resolution of
jurisdiction.  PCG opposed the *ex parte* application on June 24,
2003, and WCG replied on June 27, 2003.

The two matters presently before the Court are PCG's Motion
for Clarification and WCG's *Ex Parte* Application.  Because WCG's
*Ex Parte* Application goes to the Court's subject matter
jurisdiction over this dispute, the Court will address this
matter first.  The Court heard oral argument on July 14, 2003,
and after granting the parties' request to submit additional
briefing on certain issues raised during oral argument, the Court
took the matters under submission.

## II.  WCG'S *EX PARTE* APPLICATION

### A.   The Parties' Arguments

In its *ex parte* application, WCG contends that the present
dispute over the Protective Order arises out of the Settlement
Agreement, which is a contractual dispute that the Court
lacks jurisdiction to hear in the absence of the Court having (1)
incorporated the terms of the settlement agreement in its
dismissal order, or (2) expressly reserved jurisdiction over the
settlement agreement.  WCG's App. at 1-2, 5-7 (citing Kokkonen v.
Guardian Life Ins. Co., 511 U.S. 375, 381-82 (1994)); see also
WCG's Reply in Support of *Ex Parte* Application ("WCG's Reply") at
3.

PCG argues that "the Court has *inherent jurisdiction* to hear
challenges to the restrictions imposed by the Protective Order so
long as the restrictions remain in effect."  PCG's Opposition to
*Ex Parte* Application ("PCG's Opp.") at 1; see also id. at 2-4, 6.

Further, PCG contends that, by its motion, PCG "does not seek
enforcement of the *settlement agreement*, but clarification of the
*Protective Order*," and that accordingly, the Court's jurisdiction
over this matter is not dependent on a reservation of
jurisdiction over the Settlement Agreement in the terms of the
dismissal order.  <u>Id.</u> at 1; <u>see also</u> <u>id.</u> at 8-9.

B.  <u>Subject Matter Jurisdiction</u>

In <u>Kokkonen</u>, <u>supra</u>, the Supreme Court held that
"[e]nforcement of . . . [a] settlement agreement, . . . whether
through award of damages or decree of specific performance, is
more than just a continuation or renewal of the dismissed suit,
and hence requires its own basis for jurisdiction." <u>Kokkonen</u>,
511 U.S. at 377-78.  Further, the <u>Kokkonen</u> court held that for
the court to retain continuing jurisdiction over an action after
a dismissal-producing settlement agreement, the court must retain
such jurisdiction either by incorporating the terms of the
settlement agreement into the dismissal order or by expressly
*stating in the dismissal order the court's* "retention of
jurisdiction" over the settlement contract.  <u>Id.</u> at 381.[4]

<u>Kokkonen</u> is no bar to the Court's jurisdiction over the
present dispute, however, because PCG does not seek to enforce
the Settlement Agreement.  Rather, the relief PCG seeks is a
determination that WCG utilized an overly expansive definition of
confidentiality in designating its documents "confidential," in
violation of the Protective Order.  As set forth in the above-
quoted paragraph 11 of the Protective Order, the order
contemplates continuing supervision of the parties' conduct with
respect to confidential documents after termination of the
litigation.  WCG App., Ex. B, ¶ 11 (setting forth procedures for
the destruction and/ or return of documents designated
"Confidential" and obligating each party to "maintain[] the

---

[4]     The Ninth Circuit has held that the means of retaining
jurisdiction set forth in <u>Kokkonen</u> must be explicitly expressed
in the dismissal order.  <u>See, e.g.</u>, <u>Hagstead v. Tragesser</u>, 49
F.3d 1430, 1433 (9th Cir. 1995) (holding that the district court
lacked jurisdiction to hear disputes arising out of settlement
agreement, even where the court stated on the record its
intention to retain jurisdiction to enforce the agreement,
because the dismissal order did not expressly retain jurisdiction
or incorporate the terms of a settlement agreement as required
under <u>Kokkonen</u>); <u>O'Connor v. Colvin</u>, 70 F.3d 530, 532 (9th Cir.
1995) (holding that an order "based on" a settlement agreement,
without more, does not "embody the settlement contract" and
*therefore* "*is insufficient to create ancillary jurisdiction*").

confidentiality of all Confidential Information received pursuant
to [the Protective Order]" after the conclusion of the
litigation). Thus, PCG's claim does not arise from the
Settlement Agreement; rather, PCG merely seeks a declaration that
WCG has violated the terms of the Protective Order, over which
the Court has continuing jurisdiction. Poliquin v. Garden Way,
Inc., 989 F.2d 527, 532 n.1 (1st Cir. 1993) ("[T]he orders in
question represent in part a declaration of the scope of the
existing August 2 order as applied to disputed materials and in
part a refusal to remove prior protection. Thus, the orders were
within the district court's continuing authority over previously
issued orders.") (emphasis added); see also Beckman Indus., Inc.
v. Int'l Ins. Co., 966 F.2d 470, 472 (9th Cir. 1992); Public
Citizen v. Ligget Group, Inc., 858 F.2d 775, 782 (1st Cir. 1988)
(noting that correlative to the inherent power to enforce a
protective order, a district court necessarily retains the power
to modify such orders in light of changed circumstances); United
Nuclear Corp. v . Cranford Ins. Co., 905 F.2d 1424, 1427 (10th
Cir. 1990) (holding that court retains power to modify protective
order even if underlying suit is dismissed); United States v.
Swift & Co., 286 U.S. 106, 114015 (1932).[5]

## III. PCG'S MOTION FOR CLARIFICATION OF CONFIDENTIALITY STIPULATION AND ORDER

Having concluded that the Court retains jurisdiction to
determine the parties' rights and obligations under the
Protective Order, the Court determines that the parties'
challenges to each others' confidentiality designations are

---

[5]     The present situation is distinguishable from William
Keeton Enterprises v. A All American Strip-O-Rama, 74 F.3d 178
(9th Cir. 1996), in which the Ninth Circuit reversed a district
court's determination that it possessed jurisdiction to issue
post-dismissal orders in order to enforce orders issued in
conjunction with the parties' voluntary dismissal. Id. at 182.
The Court in William Keeton held that the district court lacked
jurisdiction to enter a second injunction which imposed
additional obligations on the parties beyond those agreed to in
their stipulated judgment and permanent injunction. Because the
stipulated judgment did not confer continuing jurisdiction on the
district court, the Ninth Circuit concluded that the district
court could not issue an injunction that differed from that
stipulated to by the parties. Id. at 182-83. Here, PCG does not
seek from the Court an imposition of additional obligations on
the parties, but merely a declaration as to the parties' existing
rights and obligations under the Protective Order.

permissible under the Protective Order for the reasons set forth
below.

Although WCG advances numerous arguments intended to show
that to permit PCG to challenge confidentiality designation at
this late stage would be the equivalent of permitting PCG to
rewrite the Protective Order, the Court disagrees.

First, WCG argues that paragraph 2 of the Protective Order
limits use of the confidential documents to the now dismissed
litigation.  WCG Further Supp. Brief in Opp. to PCG's Mot. for
Clarification Stipulation and Order ("WCG Supp. Brief") at 2.
This argument ignores the real issue, namely, whether the
documents the parties marked as confidential fall within the very
limited definition of "Confidential Information" set forth in the
preamble to the Protective Order.

Next, WCG suggests that PCG's challenge could only be made
during the discovery phase of the case and then, only so long as
a special master had been appointed.  Neither of these arguments
is persuasive.  WCG Supp. Brief at 3-4.  Paragraph 9 of the
Protective Order merely delineates procedures if a special master
has been appointed.  Paragraph 10 makes clear that there is no
time limit for objecting to confidentiality.  Therefore, a fair
reading of the Protective Order is that either party retained the
right to challenge confidentiality up to the time confidential
documents were to be returned pursuant to paragraph 11 of the
Protective Order.  With reference to the suggestion that a
challenge to confidentiality may only be made if a special master
is in place, the Protective Order does not appear to place any
such limitation on the parties' ability to challenge
confidentiality.  First, as set forth above, paragraph 9 only
applies if a special master is in place.  Paragraph 10 appears to
contain no such limitation.  Moreover, as PCG points out, a
special master was in place until this matter was transferred to
this Court.  At that time, the Special Master was discharged.
WCG implicitly acknowledges that PCG could have challenged the
confidentiality designations during discovery; if a special
master were required to be in place to enable there to be a
challenge to a confidentiality designation, it made no sense for
the parties to consent to the discharge of the special master
while the discovery phase of this case was ongoing.  Moreover,
given that all discovery is automatically referred to the a
magistrate judge assigned randomly to cases as filed, the logical
reading of the Protective Order is that challenges to
confidentiality designations could be made to the Magistrate
Judge in the event there is no special master.

Finally, WCG contends that granting the present request by
PCG for clarification would result in a modification of the

settlement agreement. WCG Supp. Brief at 6. As set forth above, the Court views the present request as one requiring it to construe the Protective Order. In this regard, the Court notes that in light of its construction of the Protective Order as permitting challenges to confidentiality designations up to the time confidential documents must be returned pursuant to paragraph 11, PCG's current request would be appropriately made under the Protective Order even if this case had been tried to judgment rather than settled. This is so because PCG made its challenge to confidentiality prior to the expiration of sixty days following the termination of the litigation, thereby effectively challenging the confidentiality designation before confidential information was required to be returned.[6] As a result, there can be no rational argument that there has been a modification of the settlement agreement.

Accordingly, the Court finds that the parties may challenge confidentiality designations as being inconsistent with the definitions contained in the Protective Order. The question of whether confidentiality designations are overbroad and exceed the scope of the Protective Order with regard to particular documents that are the subject of their respective motions shall be referred to a special master, as provided for in paragraph 9 of the Protective Order. WCG App., Ex. B, ¶ 9. The Court orders the parties to submit proposals regarding a mutually agreed upon special master. If, however, the parties cannot agree on a special master, the Court will appoint a special master and fix the compensation to be allowed, pursuant to Fed. R. Civ. P. 53(a).

## IV. CONCLUSION

WCG's *ex parte* application is hereby DENIED.[7] The Court declines at this time to render a decision on the merits of PCG's motion for clarification of the confidentiality stipulation and

---

[6]   The Court finds that PCG's challenge to WCG's confidentiality designation served to toll the sixty day period. Thus, the Court deems WCG's oral objection at the July 14, 2003 hearing to certain of PCG's confidentiality designations as being sufficient to preserve WCG's right to challenge to such designations under the Protective Order.

[7]   WCG's request for an extension of time to respond to PCG's motion, such request appears to be moot because WCG responded to PCG's motion on June 23, 2003.

order and will defer such decision until a recommendation is made
by a special master to be agreed upon by the parties, or in the
alternative, to be appointed by the Court.

    IT IS SO ORDERED.